**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARLOS ORELLANA-SANCHEZ, | Civil Action No. 12-6309 (FSH) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| PRESSLER & PRESSLER, LLP, and NEW CENTURY FINANCIAL SERVICES, INC., | |
| Defendants. | |

**CLARK, United States Magistrate Judge**

  **THIS MATTER** comes before the Court by way of Plaintiff Carlos Orellana-Sanchez's ("Plaintiff" or "Orellana-Sanchez") Motion for Summary Judgment (Dkt. No. 54) and Defendants Pressler and Pressler, LLP ("Pressler") and New Century Financial Services, Inc.'s ("New Century") (collectively "Defendants") Cross-Motion for Summary Judgment (Dkt. No. 55). Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Faith S. Hochberg, U.S.D.J., referred the Motion to the Undersigned for Report and Recommendation. The Court has considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' written submissions, for good cause shown, and for the reasons set forth herein, the Undersigned respectfully recommends that the District Court **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendants' Motion for Summary Judgment.

**I.  BACKGROUND**

  The parties stipulated and agreed to the following facts for the purposes of filing motions for summary judgment. (Dkt. No. 16, "SJ Stip."). Plaintiff is a consumer, as defined by 15 U.S.C. § 1692a(3). (SJ Stip., at ¶1). Defendants Pressler and New Century

are "debt collectors" as defined by 15 U.S.C. § 1692a(6).  (SJ Stip., at ¶2).  On February 4, 2006, Plaintiff, while residing in Phoenix, Arizona, opened a T-Mobile account (the "Account") ending in "2193".  *(SJ Stip., at ¶¶3, 5, 8).*  Plaintiff did not sign any contract creating the Account in Middlesex County, New Jersey.  (SJ Stip., at ¶4).  The last payment on the Account was made on November 27, 2006.  (SJ Stip., at ¶8).  On March 5, 2007, the Account was written-off for nonpayment with a principal of $425.55.  (SJ Stip., at ¶8).  On or about August 9, 2011, New Century, a buyer of distressed debt, "acquired a portfolio of defaulted accounts from Debt Recovery Solutions which included the Account" in the name of Plaintiff.  (SF Stip., at ¶7).[1]  When New Century acquired the Account debt, the address associated with the Account was 122 Ridgeley Ave., Iselin, NJ 08830.  (SJ Stip., at ¶8).   Immediately, the Account was referred to Pressler, New Century's collection counsel, to initiate collection activity.  (SJ Stip., at ¶9).

On August 18, 2011, Pressler sent an "Initial Notice Letter" via regular mail to Plaintiff at 122 Ridgeley Ave., Iselin, NJ 08830.  (SJ Stip., at ¶10).  Plaintiff did not respond to this letter and the letter was not returned to Pressler as undeliverable.  (SJ Stip., at ¶11).  Plaintiff only resided at the aforementioned address from May 2009 to January 2010.  (SJ Stip., at ¶12).  From January 2010 to the present, Plaintiff resided in Hudson County at 78 Williams Ave., Apt. 2, Jersey City, NJ 07302.  (SJ Stip., at ¶13).  Plaintiff did not notify T-Mobile as to either of his address changes.  (SJ Stip., at ¶¶12-13).

On October 25, 2011, Pressler filed a Summons and Complaint titled *New Century Financial Services, Inc. v. Carlos Orellana-Sanchez*, No. DC-022877-11, in the Superior Court of New Jersey, Law Division, Special Civil Part, Middlesex County ("Middlesex

---

[1] Plaintiff's name, Carlos Orellana-Sanchez, has been misspelled "Oerllana" with respect to the Account and the state court lawsuit at issue.  (SJ Stip., at ¶7, n.1).

2

County Action"). (SJ Stip., at ¶14). On October 31, 2011, the Middlesex County Special Civil Part's office mailed the Summons and Complaint to Plaintiff at 122 Ridgeley Ave., Iselin, NJ 08830. (SJ Stip., at ¶¶15-16). The certified mail receipt for the Summons and Complaint, however, was returned in a manner indicating service was not effectuated on Plaintiff. (SJ Stip., at ¶17 and Ex. D). A copy of the certified mail receipt has "UTF" written on it. (SJ Stip., at Ex. D).[2] On November 10, 2011, Pressler received notice from the Middlesex County Special Civil Part that the Summons and Complaint were not served because the mail was returned as "ADDRESSEE UNKNOWN." (SJ Stip., at ¶18 and Ex. E). On November 11, 2011, Pressler ran an Accurint report based upon Plaintiff's social security number which identified a new address for Plaintiff as 78 Williams Ave., Apt. 2, Jersey City, NJ 07302. (SJ Stip., at ¶19).

On December 13, 2011, Pressler received a letter from Plaintiff's counsel, dated December 8, 2011, claiming violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). (SJ Stip., at ¶20). On December 19, 2011, Pressler filed a request to change venue along with an Amended Complaint and a new Summons. (SJ Stip., at ¶21). Pressler then requested service of the Amended Complaint and Summons to be sent to Plaintiff at 78 Williams Ave., Apt. 2, Jersey City, NJ 07304. (SJ Stip., at ¶22). On December 27, 2011, a Notification of Transfer was issued by the Court transferring the action to the Superior Court of New Jersey, Law Division, Special Civil Part, Hudson County ("Hudson County Action"). (SJ Stip., at ¶23). On January 9, 2012, the Hudson County Special Civil Part served the Summons and Amended Complaint. (SJ Stip., at ¶24).

---

[2] "UTF" or "Not Deliverable as Addressed—Unable to Forward" means that "Mail undeliverable at address given; no change-of-address order on file; forwarding order expired." *See* United States Postal Service, Section 507 Mailer Services, http://pe.usps.com/text/dmm300/507.htm.

The certified mail receipt that was returned to Hudson County Special Civil Part was signed for on January 11, 2012.  (SJ Stip., at ¶25).

On October 5, 2012, Plaintiff filed the instant complaint. (Dkt. No. 1).  New Century filed its answer on November 11, 2012.  (Dkt. No. 6).  Pressler filed its answer on November 26, 2012.  (Dkt. No. 12).  On April 29, 2014, the parties jointly submitted a Stipulation of Facts and Exhibits for Summary Judgment Motion ("SJ Stip.").  (Dkt. No. 16).  On April 30, 2013, a status conference was held by the Court wherein a briefing schedule was set for summary judgment motions.  (Dkt. No. 17).  On June 7, 2013, Plaintiff filed its initial summary judgment motion. (Dkt. Nos. 19, 20).  On June 20, 2013, Defendants jointly filed their initial summary judgment motion.  (Dkt. No. 21).  The briefing for both summary judgment motions was completed by July 8, 2013.  On November 7, 2013, the Court entered an Order referring this case to Arbitration.  (Dkt. No. 42).  On November 12, 2013 the Court administratively terminated the parties' initial summary judgment motions.  (Dkt. No. 43).  On November 26, 2013, Plaintiff filed a motion to reconsider the Court's order referring the case to arbitration. (Dkt. No. 49).  On December 6, 2013, the Court vacated the order and instead ordered the parties to mediation. (Dkt. No. 51).  The parties were unsuccessful in mediation, and on May 27, 2014, the parties filed a joint motion to re-file summary judgment motions.  (Dkt. No. 52).  On June 5, 2104, the Court granted that motion.  (Dkt. No. 53).  Both parties cross-moved for summary judgment.  (Dkt. Nos. 54, 55).

## II.      STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the nonmoving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249.  "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323.  This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23.  This burden can be "discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. *Id.*

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

On cross-motions for summary judgment, "[e]ach movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions."  *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).  In the case at bar, the parties submitted a Stipulation of Facts for their respective motions.  The stipulation is intended to serve as the L. Civ. R. 56.1 Statement of Material Facts Not in Dispute supporting the instant motions.  Accordingly, for purposes of deciding this motion, the only issue before the Court is whether Plaintiff or Defendants are entitled to summary judgment as a matter of law.

## III.    DISCUSSION

Plaintiff moves for summary judgment on his FDCPA claim, alleging that Defendants brought a legal action on a debt against Plaintiff in a judicial district other than where Plaintiff signed the agreement creating the debt or where Plaintiff resided at the commencement of the action.  Defendants filed a cross-motion for summary judgment alleging that they are entitled to summary judgment against Plaintiff because 1) they took reasonable precaution prior to instituting the lawsuit, 2) to impose liability for this technical violation would contravene the purpose of the FDCPA, and 3) Plaintiff suffered no harm or injury.  (Dkt. No. 55-1, at 8).  Defendants also allege that if they are found liable, that they committed a bona fide error by commencing the Middlesex County Action.

First, the Court finds that Plaintiff as a "consumer" has standing to enforce the provisions of the FDCPA against Defendants, "debt collectors."  *See* 15 U.S.C. § 1692k(a)

("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person.").

Next, the Court examines whether Defendants violated § 1692i of the FDCPA by filing the Middlesex County Action. Plaintiff alleges that Defendants violated § 1692i(a)(2) as a matter of law the moment they filed the action in Middlesex County, a district in which Plaintiff neither resided, nor signed the contract sued upon. According to Plaintiff, "[o]nce Defendants filed the underlying state court action, liability attached immediately." *See Holton v. Huff*, No. 10-2396, 2012 WL 1354024, at *3 (M.D. Pa. Apr. 16, 2012). Defendants, on the other hand, focus on the language and purpose of § 1692i(a)(2) of the FDCPA. Defendants contend that liability should not attach because there was no harm or injury to Plaintiff since Plaintiff was never served, and he did not have to appear and/or defend in the Middlesex County Action. Defendants explain that holding them liable would not advance the purpose of the FDCPA. In support of this, Defendants cite to a recent Fifth Circuit case, *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440 (5th Cir. 2013), which found that a violation does not arise under § 1692i(a)(2) until such time as the alleged debtor receives notice of the suit.

The venue provision of the FDCPA provides, in relevant part, that:

> Any debt collector who brings any legal action on a debt against any consumer shall . . . *bring such action* only in the judicial district or similar legal entity-- (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a)(2) (emphasis added). The issue before the Court is whether Defendants' filing of a complaint in the Middlesex County Action violated § 1692i(a)(2). In addressing this, the Court must determine what triggers a violation of § 1692i(a)(2) by examining the language of the statute, specifically the language "bring such action." The

7

Third Circuit and district courts in New Jersey have yet to address this issue.  The Fifth Circuit, however, undertook an analysis of the FDCPA's statutory language and determined that "for purposes of § 1692k(d)[3] that a violation of § 1692i(a)(2) does not occur until a debtor is provided notice of the debt-collection suit."  *Serna*, 732 F.3d at 443.

The Fifth Circuit began its discussion by noting that "reasonable minds could differ—as they do here—regarding the triggering event for a violation to arise under § 1692i(a)(2)."  *Id.*  The court drew a distinction between when a complaint was *filed* versus when a complaint was *served*.  *Id.*  First, the court examined the plain language of the statute.  *Id.*  The court concluded that "bring such action" was inherently ambiguous and explained that:

> Unfortunately, rather than use straightforward terms such as "file" or "file and provide notice"—which would clearly establish when a violation for purposes of § 1692k(d) arises under § 1692i(a)(2)—Congress elected to use the ambiguous phrase "bring such action."  Although Black's Law Dictionary defines "bring an action" as to "sue" or "institute legal proceedings," the phrase "bring such action" does not have a plain meaning synonymous with filing a pleading.  *See* Black's Law Dictionary 219 (9th ed. 2009).  For example, in the context of another statute, our sister circuit declined to hold that "bring an action" is synonymous with "commencing a suit."  *See Bowles v. Am. Stores*, 139 F.2d 377, 378, 78 U.S. App. D.C. 238 (D.C. Cir. 1943).

*Id.* at 443-44.  The court explained that in Texas, the term "bring" is not synonymous with filing a pleading.  *Id.*  at 444.  "Instead, '[t]o bring suit, a plaintiff must both file her action and have the defendant served with process.'"  *Id.*  (internal citations omitted).  The *Serna*

---

[3] Section 1692k(d) of the FDCPA is the statute of limitations provision, which provides that to enforce a violation of the FDCPA, an action "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

Court went on to find that "based on the inherent ambiguity of this phrase we cannot conclude that 'bring such action' has any plain meaning, much less that it is necessarily synonymous with simply filling a pleading." *Id.* at 445.

Next, the court engaged in a comprehensive discussion of the history and purpose of the FDCPA's legislative scheme "to determine which approach best encapsulates Congress's intent." *Id.* The court examined the FDCPA's remedial nature and strong consumer protection policy. *Id.* The court explained that Congress intended to eliminate "abusive debt collection practices by debt collectors." *See* § 1692(e). The court concluded that "the remedial nature of this statute is best served for purposes of § 1692k(d) by tying a violation of § 1692i(a)(2) to notice necessitating action because this approach: (1) most directly focuses on the harm Congress sought to remedy through the FDCPA, and (2) best preserves the availability of relief for consumers." *Id.* The Fifth Circuit explained that:

> First, when a debt collector files suit against an alleged debtor in contravention of § 1692i(a)(2), no harm immediately occurs because the debtor likely has no knowledge of the suit and has no need to act. Therefore, tying a violation to the mere filing of a complaint does not serve the statute's remedial purpose. Upon receiving notice, however, the harm is realized because the debtor must then respond in a distant forum or risk default. Because the harm of responding to a suit in a distant forum arises only after receiving notice of that suit, a 'violation' does not arise under § 1692i(a)(2) until such time as the alleged debtor receives notice of the suit.

*Id.* at 445.

The Fifth Circuit noted that its conclusion was buttressed by a contextual tracing of the origins of § 1692i(a)(2) to the Federal Trade Commission's ("FTC") implementation of fair-venue standards. *Id.* at 446. The fair-venue standards "prohibit[] the institution of suits against a defendant other than where [the] defendant resides or where the contract

sued upon was signed." *In re Spiegel, Inc.*, No. 8990, 86 F.T.C. 425, 1975 WL 173254, at

*8 (F.T.C. Aug. 18, 1975), *enforced as modified*, *Spiegel Inc. v. FTC*, 540 F.2d 287 (7th

Cir. 1976).  Following this, Congress adopted the fair-venue standard of the FDCPA.

*Serna*, 732 F.3d at 447 (internal citation omitted).  The *Serna* Court explained that:

> This background guides our analysis in two significant
> respects.  First, in light of the earlier use of the terms "file"
> and "institute" in the Senate Report and FTC opinions,
> Congress's use of the phrase "bring such action" in §
> 1692i(a)(2) strongly suggests that Congress did not intend
> for this phrase simply to be equated with filing a pleading.
> Had Congress intended for a violation to have occurred
> merely by filing, it would have used the phrase "file such
> action"; instead, Congress declined to use the word "file"
> and selected instead to use the broader term "bring."
> Congress's decision to use the word "bring" rather than
> "file" demonstrates its intent that "bring such action"
> requires more than simply filing a pleading.
>
> Second, the fair-venue standards on which Congress relied
> did not seek to cure the harm of filing a suit per se, but rather
> addressed the hardship experienced by a debtor forced to
> respond to the suit in a distant forum.  Filing a pleading
> alone does not give rise to this hardship. Instead, it is upon
> receiving notice of a debt-collection suit that the alleged
> debtor experiences the harm the fair-venue standards sought
> to remedy because it is then that he must respond to the suit.

*Id.* at 447-48.  Based on the ambiguity of the statute and history surrounding the FDCPA's

adoption, the Fifth Circuit held that "for purposes of § 1692k(d) no violation of §

1692i(a)(2) occurs until the debtor is given notice of the debt-collection action."  *Id.* at

448.[4]

---

[4]  Other circuits are split as to what triggers the statute of limitations.  *Compare Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (limitations period begins upon service of process), *with Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (limitations period begins upon "filing of the complaint").

The issue before this Court centers on the event to trigger a violation under § 1692i(a)(2).  Plaintiff relies on *Holton v Huff*, which held that Defendants violated the statute "upon filing the action" in wrong venue.  No. 10-2396, 2012 U.S. Dist. LEXIS 53185, at *8 (M.D. Pa. Apr. 16, 2012).  The court in *Holton* explained that "[o]nce the debt collector sues in the wrong venue, the consumer must defend, and the damage is done." No. 10-2396, 2012 U.S. Dist. LEXIS 53185, at *8 (M.D. Pa. Apr. 16, 2012) (quoting *Beeler-Lopez v. Dodeka, LLC*, 711 F. Supp. 2d 679 (E.D. Tex. 2010)).[5]  First, the *Holton* case is not binding on this Court.  Moreover, the Court finds that the Fifth Circuit's extensive analysis of the language and legislative history of § 1692i(a)(2) is more persuasive to the case at bar.  Although *Serna* dealt with what event triggers the statute of limitations, as opposed to what triggers a violation of § 1692i(a)(2), it is a prudent, well-reasoned decision that will guide this Court's analysis.

The Court finds that the language "bring such action" in § 1692i(a)(2) is "inherently ambiguous."  Based on this ambiguity, the Court turns to the legislative history of the statute.  The legislative history indicates that Congress adopted § 1692 "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  A court within this District explained that "Congress adopted [§ 1692i(a)(2)] to address 'the problem of forum abuse, an unfair practice in which debt collectors file suit against consumers in

---

[5] The *Beeler-Lopez* Court, which *Holton* relies upon, found that to "bring an action" means "[t]o sue; institute legal proceedings."  711 F. Supp. 2d at 681.  However, the *Serna* Court, as explained below, found that "[a]lthough Black's Law Dictionary defines 'bring an action' as to 'sue' or 'institute legal proceedings,' the phrase 'bring such action' does not have a plain meaning synonymous with filing a pleading."  732 F.3d at 443.  This Court agrees.  Moreover, the Fifth Circuit reversed the lower court's decision, which relied on *Beeler-Lopez* to find that the statute of limitations began to run upon the filing of the lawsuit.  *Serna*, 732 F.3d at 443.

courts which are so distant or inconvenient that consumers are unable to appear,' hence permitting the debt collector to obtain a default judgment." *Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. 12-1157, 2012 U.S. Dist. LEXIS 83428, at \*17-18 (D.N.J. June 13, 2012) (quoting *Hess v. Cohen & Slamowitz, LLP*, 637 F.3d 117, 120 (2d. Cir. 2011) (quoting S. Rep. No. 95-382, at 5 (1977)). This Court finds that the remedial nature of the statute is best served by requiring "notice [through proper service] necessitating action [by the Defendant]" before a violation occurs. *Serna*, 732 F.3d at 445 ("[T]ying a violation to the mere filing of a complaint does not serve the statute's remedial purpose."). This Court agrees that when a suit is filed against an alleged debtor in violation of § 1692i(a)(2) "no harm immediately occurs because the debtor likely has no knowledge of the suit and has no need to act." *Serna*, 732 F.3d at 445. It is only when the debtor receives notice of the suit that the debtor experiences harm, because the "debtor must then respond in a distant forum or risk default." *Id.* Accordingly, the Court finds that a violation does not arise under § 1692i(a)(2) until the alleged debtor receives notice of the suit and is forced to respond.

Plaintiff claims that even if the Court relies on *Serna* that Defendants are still liable because Plaintiff suffered harm when he had to respond to the Middlesex County Action. Plaintiff claims, without providing any evidence, that he obtained notice of the improperly filed lawsuit through his roommate. Plaintiff claims this notice required him to retain counsel, who then sent Defendants a letter advising them they filed legal action in the wrong venue. However, in order for a Plaintiff to be forced to defend an action or for a default judgment to be entered, the Plaintiff must be served. Here, service was not effectuated. In fact, the case was on the dismissals list. The Court finds that Plaintiff was not under any sort of legal obligation to contact Defendants or get involved in this action.

Default could not even be entered against Plaintiff in the Middlesex County Action.  Thus, Plaintiff did not experience the type of harm that the FDCPA sought to remedy. Accordingly, the Court holds that Defendants did not violate § 1692i(a)(2) as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Undersigned respectfully recommends that the District Court **DENY** Plaintiff's Motion for Summary Judgment [Dkt. No. 54] and **GRANT** Defendants' Motion for Summary Judgment [Dkt. No. 55].  The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 72.1(c)(2).

Dated:  February 6, 2015

s/James B. Clark, III
**JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**